# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| GINGER BEEBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV408-010 |
| | ) |
| GARY EUGENE BEEBE, | ) |
| | ) |
| Defendant. | ) |

## ORDER

In this removed case, defendant seeks a protective order relieving him of the obligation of having to travel from his Michigan residence to Savannah, Georgia for a deposition. (Doc. 25.) In addition, defendant seeks an order compelling plaintiff to respond fully to certain discovery requests and to remove certain objections to those requests that he contends are meritless. (Id.) For the reasons that follow, defendant's motion is **GRANTED IN PART**.

## I. PROTECTIVE ORDER

Defendant contends that he should not be required to travel to

Georgia to be deposed. (Id.) Specifically, he argues that he should be deposed in Michigan where he now resides because he does not regularly travel to Georgia, his work as a military officer would be disrupted if he were required to travel here, and the cost of travel would impose a significant hardship upon him. (Id. at 3-5.) Plaintiff argues that the equities of the case require that the deposition be conducted in Savannah because defendant's alleged "immoral" conduct, which gave rise to this lawsuit, obligates him to return to Savannah.[1] (Doc. 26 at 2.) Essentially, plaintiff asks the Court to take a stand on the merits of the case before the defendant has even been deposed, much less adjudicated as a wrongdoer of any kind.

As a general rule, "the examining party may set the place for the deposition of another party wherever he or she wishes subject to the power

---

[1] Plaintiff contends that defendant, her brother-in-law, tortiously interfered with her marriage. (Doc. 1 Ex. A.) Plaintiff actively sought a divorce from her husband in January 2005. (Id. at 2.) On December 5, 2005, her husband suffered a massive heart attack and never regained consciousness. (Id.) Plaintiff was still married to her husband at the time. (Id.) Defendant allegedly "urged and persuaded counsel for [plaintiff's husband] to have the divorce granted," though the husband was incompetent at the time. (Id.) The divorce was granted on December 7, 2005, and plaintiff's husband died on December 16, 2005. (Id.) Plaintiff argues that defendant's conduct in attempting to finalize the divorce without any agency or authority states a claim for tortious interference with plaintiff's marriage contract. (Id. at 3.)

2

of the court to grant a protective order under Rule 26(c)(2) designating a different place." 8A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2112 (2d ed. 1994). But "courts are more willing to protect defendant from having to come to [plaintiff's chosen] forum for the taking of his or her deposition than they are in the case of plaintiffs." <u>Id.</u> Defendant proffers several reasons why the deposition should not be held in Savannah, and plaintiff offers nothing other than an appeal to the merits in response. Defendant's motion for a protective order is **GRANTED**. The Court **DIRECTS** that his deposition proceed in the district of defendant's residence in Michigan or, at parties' option, by telephone or other electronic means.

## II. MOTION TO COMPEL

Defendant also asserts that plaintiff improperly objected to or failed to respond fully to several discovery requests.[2] (Doc. 25 at 6-14.)

---

[2] Defendant also moves to compel plaintiff to withdraw several improperly asserted "general objections" that apply to each of the responses. (Doc. 25 at 6-7.) The Court **DENIES** defendant's motion. Instead, the objections will be ignored as unnecessary surplusage. <u>Interland, Inc. v. Bunting</u>, 2005 WL 2414990, at *5 (N.D. Ga. Mar. 31, 2005) ("global objections are improper and the Court will ignore them unless [plaintiff] specifically asserts them in response to an interrogatory").

Consequently, defendant moves to compel responses to those discovery requests. (Id.) Plaintiff failed to respond to defendant's motion to compel. Accordingly, the Court will treat the motion as unopposed. L.R. 7.5.

Plaintiff refused to respond to interrogatory number 6 and request to produce numbers 1 and 8 based upon attorney-client privilege and the work-product doctrine. (Doc. 25 Ex. D.) The attorney-client privilege shields from disclosure any confidential communication between a client and his attorney made for the purpose of seeking or providing legal assistance to the client. Joiner v. Hercules, Inc., 169 F.R.D. 695, 697 (S.D. Ga. 1996); Shipes v. BIC Corp., 154 F.R.D. 301, 304 (M.D. Ga. 1994). The work-product doctrine protects certain trial preparation materials, mental impressions of counsel, and legal theories from discovery. Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 511-14 (1947). Plaintiff has not properly asserted either protection. Merely objecting on the ground of privilege or work-product is insufficient. A party asserting such a protection must not only claim it expressly but must demonstrate that each essential element of the protection is present with respect to the specific communication or document whose disclosure is sought. "That burden is

not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." In re Bonanno, 344 F.2d 830, 833 (2nd Cir. 1965). The Court should not have to guess or speculate about the applicability of such a protection, for the party asserting it has the affirmative duty to demonstrate that it applies to each document or communication sought to be disclosed. See United States v. Davis, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981) (noting that a failure to demonstrate how a specific document comes within the ambit of the attorney-client privilege could be fatal to the party asserting the privilege). Here, the Court is faced with blanket assertions that the information sought is protected. (Doc. 25 Ex. D.) Plaintiff has not supplemented the record with any further specifics that will allow the Court to make an intelligent and independent assessment of whether the protections are properly asserted.

The usual method for establishing the applicability of a privilege or other protection to any documents or communications is through the preparation of a document index or "privilege log." In re Stein Law Firm,

No. 05mc033, 2006 WL 1305041, at *7 (D.N.M. Feb. 9, 2006); Int'l Paper Co. v. Fibreboard Corp., 63 F.R.D. 88, 93-94 (D. Del. 1974); See United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990). The log should be supported by affidavit or other evidence, identifying each document or communication claimed to be protected and setting forth sufficient facts to allow a judicial determination as to whether the particular communication or document is in fact protected. If plaintiff wishes to persist in her assertion of these protections, then within ten days of this Order she shall submit a detailed privilege log specifically setting forth the following information as to each document or communication claimed to be protected:

(1) the nature of the document or communication;
(2) the date of the document or communication;
(3) its source;
(4) the intended recipient;
(5) each individual or entity that received it;
(6) the purpose for which it was prepared;
(7) the nature of the protection asserted; and
(8) sufficient facts to allow the Court to assess whether the document or communication falls within the privilege or protection asserted.

If plaintiff chooses to forge ahead with this matter, defendant will have ten days to review the index and prepare a response contesting her assertions

of attorney-client privilege or work product protection.

Defendant's remaining requests and interrogatories were either objected to on grounds of relevance or were not answered in sufficient detail or in a timely fashion. After examining the requests and interrogatories, the Court finds that they are relevant to plaintiff's claim and they should be answered immediately.[3] Accordingly, defendant's motion to compel responses to interrogatories 8 and 12 and requests for production 5, 7, and 13 is **GRANTED**.

Finally, Rule 37(a)(5)(A) explains that if the Court grants a motion to compel, it "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's

---

[3] Contrary to plaintiff's assertion, any sexual dalliances with adults other than her husband are relevant to her claim. A claim for tortious interference with a contract requires a plaintiff to prove that the defendant: (1) acted improperly and without privilege; (2) acted purposely and with malice and the intent to injure; (3) induced a third party not to enter or continue a business (or, in this case, marital) relationship with the plaintiff; and (4) that the plaintiff was financially injured. Dalton Diversified, Inc. v. AmSouth Bank, 605 S.E.2d 892, 898 (Ga. Ct. App. 2004) (citing Blakely v. Victory Equip. Sales, 576 S.E.2d 288 (2002)). There is a question as to whether defendant induced a third party to terminate the marriage contract, as plaintiff had already initiated divorce proceedings against her husband. Plaintiff asserts that she attempted to call the proceedings off because she still loved her husband and was not ready for a divorce. (Doc. 25 Ex. D at 7.) If she had any adulterous affairs, they would impact the credibility of her assertion and could conceivably lead to admissible evidence. Fed. R. Civ. P. 26(b)(1).

reasonable expenses incurred in making the motion, including attorney's fees" unless "circumstances make an award of expenses unjust." Accordingly, plaintiff is **DIRECTED** to show cause, within ten days of the entry of this Order, why she should not be required to pay defendant's reasonable expenses incurred in making this motion to compel, including attorney's fees.

**SO ORDERED** this  27th  day of June, 2008.

/s/ G.R. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA